# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | Criminal No. 1:05-CR-443-2 |
| | : | |
| | : | (Chief Judge Kane) |
| DEREK MAES, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Before the Court is the Government's motion to permit departure from Defendant Derek Maes's ("Maes") sentence pursuant to 18 U.S.C. 3553(e) and Rule 35 of the Federal Rules of Criminal Procedure. (Doc. No. 1912.) The Government requests that the Court reduce Defendant Maes's sentence by 25%, from 168 months to 126 months. This motion is concurred in by the Defendant. (Doc. No. 1917.) For the reasons that follow, the motion will be granted in part.

## I.  BACKGROUND

On December 8, 2005, Maes was named in a multiple defendant indictment charging various crimes related to his' involvement in an interstate sex trafficking conspiracy. (Doc. No. 20.) On February 26, 2007, Maes pleaded guilty to conspiracy to engage in interstate prostitution in violation of 18 U.S.C. § 371 (Count One), interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952(a)(3) (Count Two), and sex trafficking of children in violation of 18 U.S.C. § 1591 (Count Seven). (Doc. No. 1912 at 1.) As part of the recitation of the factual basis of Maes's plea, the Government proffered the following facts:

> Derek Maes was engaged in prostitution as a pimp, that is, an
> individual who recruits, directs, manages, oversees, disciplines, and

> lives off the earnings of prostitutes. [Pimps] pass information regarding police activity in the area, and they assist other pimps in hiding women who may become witnesses against them. . . . Now, the defendants, including Mr. Maes, were also involved in the interstate trafficking of juveniles. That is, they recruited and enticed and they harbored, they transported, and they provided and obtained girls under the age of 18 to work for them as prostitutes . . . . In one case, Mr. Maes, among others, prostituted a juvenile . . . who at the time was 13 years old. . . . [A] fixed aspect of the conspiracy involved the use of force and violence against women who were being prostituted. Women were beaten if they failed to make their financial quota of earnings for the night, if they attempted to leave a particular pimp, if they looked at or spoke to another pimp, or if they were out of pocket, that is, they were not at work prostituting themselves but were instead attending to their own needs and interests. Mr. Maes and his co-defendants practiced coercion on the women being prostituted by placing them in constant fear of reprisal if they failed to meet their pimp's expectations.

(Plea Tr. at 20:10-22:10.) Maes acknowledged the truth of the Government's recitation without alteration. (Id. at 26:18-25.) Maes's Pre-Sentence Investigation Report ("PSR") further details the extreme violence Maes inflicted on the victims of this conspiracy:

> S.S. said Maes used to 'flip out' all the time. S.S. said in addition to using his hands and feet, Maes used twisted hangers, bamboo sticks, dog chains, and fish tank hoses during beatings. S.S. said she generally tried to fight back against Maes, except when he used weapons. S.S. said when Maes used weapons, she did not fight back. S.S. witnessed Maes beat another prostitute, R.S., with a bamboo stick.
>
> A.M. (a juvenile) said Maes beat her with his fists or a metal clothes hanger. A.M. said she was beaten for 'getting smart' with Maes, for lying to him, and also if she did not make enough money. A.M. said Maes was violent and always threatened her. A.M. said Maes would allow her to visit her family, but told her if she did not return, he would kill her family. A.M. recalled an occasion when Maes beat her with about twenty extension cords tied together. . . .
>
> L.G. said she had to go to the hospital several times for treatment of injuries inflicted by Maes. L.G. said she had to have her ear stitched on, had staples in her head, and had staples in her top lip because it

> was split in half. L.G. said there were many times when the beatings did not require a hospital visit. L.G. said she was beaten for just about anything and there were times when Maes said he would 'beat your ass for something you were going to do.'

(PSR ¶¶ 33, 34, 39.)

On September 2, 2008, Maes appeared before the Court for sentencing. The Court adopted the PSR without objection, including the PSR calculated guideline sentence of life. Because the binding plea the Government had negotiated with Maes provided for a sentence not in excess of 240 months, the guideline sentence was not available. The Government also moved prior to sentencing for the Court to reduce Maes's sentence 30% from the capped sentence of 240 months, to 168 months, pursuant to U.S.S.G. § 5K1.1. (Doc. No. 1287.) The Court, noting especially the significance of Maes's testimony in the lengthy trial of his co-defendants and the personal risk he had accepted in cooperating, granted the Government's motion and adopted the 30% departure.

In connection with the investigation of the pimps involved in this conspiracy, the Government learned that Kevin Coleman and Shawn Dillard, two Pennsylvania State Troopers, were generally involved with the prostitutes and passing sensitive information about the ongoing criminal investigation to them. The Government brought charges against Coleman and Dillard for this involvement with the prostitution conspiracy. Coleman pleaded guilty to obstruction of justice pursuant to a plea agreement and was sentenced on November 21, 2008, to 97 months imprisonment. After a three day trial, a jury found Dillard guilty of obstruction of justice, aiding and abetting interstate prostitution, and making false statements to the Federal Bureau of Investigation. (Doc. No. 1912 at 3.) The Government is seeking a departure for Maes based on his substantial assistance in the prosecution of these two state troopers.

## II. DISCUSSION

Rule 35(b)(1) provides that the Court can reduce a previously imposed sentence if the Government moves within one year to reduce the sentence for the defendant's substantial assistance in investigating or prosecuting another person.[1] In determining whether and to what extent to grant a departure, the Court is required to conduct "a qualitative, case-by-case analysis" and also "must examine [U.S.S.G.] § 5K1.1's enumerated factors," making specific findings regarding each factor and the evidence used to reach a decision. United States v. Torres, 251 F.3d 138, 147 (3d Cir. 2001); see also United States v. McKnight, 448 F.3d 237, 238 n.1 (3d Cir. 2006) (analyzing a Rule 35(b) determination using the Torres factors). These factors are: (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant; (3) the nature and extent of the defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and (5) the timeliness of the defendant's assistance. U.S.S.G. § 5K1.1. The application notes to § 5K1.1 further provide that substantial weight should be given to the government's evaluation of the extent and value of the defendant's assistance, particularly where these factors are difficult for the Court to ascertain. U.S.S.G. § 5K1.1 Application Note 3.

The Court is not limited to the factors listed in § 5K1.1, however, but can consider all relevant facts and factors. Torres, 251 F.3d at 148. Additionally, "[t]he decision as to the extent

---

[1] Neither the Government nor Maes appear to request a hearing on this motion, and the Court is not required hold a hearing for reduction of the previously imposed sentence. See Fed. R. Crim. P. 43(b)(4). As such, the Court will decide the issue as presented in the Government's motion.

of the departure is committed to the almost complete discretion of the district court, which may consider factors beyond the narrower set that could independently support a departure in the first instance." Id. (quoting United States v. Alvarez, 51 F.3d 36, 41 (5th Cir. 1995). In determining the proper extent of departure, the Court can consider *inter alia*: the seriousness of the crime, the impact on the crime's victims, and comparison of a defendant's conduct to that of co-defendants. Id. Accordingly, "even if the five factors enumerated in § 5K1.1 weigh in a defendant's favor, the district court may, on the basis of other considerations . . . decide to forego or curtail a downward departure for substantial assistance." Id. (quoting United States v. Mariano, 983 F.2d 1150, 1156-57 (1st Cir.1993)).

As mentioned, the Government recommends a 25% reduction from Maes's 168 month sentence. The Court will consider the Government's proffered reasons for that reduction as to each factor below.

### 1. Nature, Extent, and Significance of Cooperation

The Government states that Maes cooperated in the investigation and prosecution of Troopers Coleman and Dillard by providing information to investigators and testifying at Dillard's eventual trial. (Doc. No. 1912 at 3.) The Government found that Maes's cooperation was significant as it led to the conviction of two corrupt state troopers. (Id.)

The Court agrees with the Government's evaluation of the extent and usefulness of Maes's cooperation in the prosecution of Coleman and Dillard. Coleman took an early plea, and the information provided by Maes was essential to the factual basis of that plea and the eventual computation of Coleman's sentence. Dillard was convicted at trial of obstruction of justice, aiding and abetting interstate prostitution, and making false statements to the FBI. The

Government refers to Maes's testimony at the Dillard trial as instrumental, and though Maes's testimony was not lengthy, the Court agrees that Maes was an important witness for the Government in securing a conviction in the matter. The Court notes, however, that other witnesses provided credible testimony in support of the charges of conviction, including Kenneth Britton, Tana Adkins, and Melissa Jacobs.

### 2. Truthfulness, Completeness, and Reliability of Information or Testimony

Under this factor, the Government states that Maes's testimony was corroborated by Tana Adkins, Messlia Jacobs, and Kenneth Britton. The Court agrees with the Government that Maes's information was accurate and corroborated by the other witnesses at trial.

### 3. Danger or Risk of Injury to Defendant or Family

The Government states that it does not believe there is any significant danger to Maes or his family from his cooperation with the Government in convicting Dillard and Coleman. The Court agrees with the Government that, under the circumstances of this case, Maes's cooperation against these corrupt Pennsylvania State Troopers has not placed him or his family in any serious risk of injury.

### 4. Timeliness

The Government states that Maes's cooperation was timely and allowed the Government to indict and pursue successful prosecutions of Coleman and Dillard. The Court agrees with the Government; there is no indication that Maes's cooperation was untimely.

### 5. Other Factors

In addition to the § 5K1.1 factors, the Court must consider any other relevant factors in determining whether and to what extent a reduction is warranted. As the Court noted, Maes has

already received a substantially reduced sentence because of his cooperation with the Government. Exposed to a sentence of Life, Maes benefitted from a binding plea agreement that capped his sentence at 240 months. That potential sentence was reduced by an additional 30% reduction at the time of sentencing for his substantial assistance to the Government in the prosecution of his pimp co-conspirators, particularly in the trial of Terrance Williams and Eric Hayes where Maes was undoubtedly an essential witness. As such, granting the Government's second requested reduction would amount to almost 50% of Maes's agreed upon maximum sentence of 240 months.

While recognizing the significance of Maes's cooperation, in conjunction with the very large reduction, the Court cannot ignore the serious and violent nature of Maes's offense. As the Court noted at Maes's sentencing, it is difficult to imagine a greater offense against the community. Maes's violence towards the victims of the conspiracy is particularly egregious; he inflicted serious injury with weapons such as bamboo sticks and metal clothes hangers, coercing the women to meet his expectations and comply with his rules. He also associated and organized with the other pimps in the conspiracy who employed similar tactics. As such, the nature and circumstances of the offense are grave, and the Court must consider the seriousness of the crime and impact on Maes's victims in assessing the requested sentence reduction.

## III. CONCLUSION

The Court finds that the Torres factors do weigh in favor of a reduction in this case, but not the full departure requested by the Government. While Maes's cooperation was sufficiently significant, reliable, and timely, the Court also must consider the extremely serious nature of Maes's offense and the already significant reductions he has received from his original guideline

7

sentence. Balancing all the above considerations, the Court will reduce Maes's previously imposed sentence of 168 months imprisonment to 144 months. Such a reduction reflects an additional 15% reduction in Maes's sentence, amounting to an overall reduction of 40% from the original guideline sentence of 240 months. Considering Maes's extensive criminal history and likely danger to the community, the Court finds that no greater reduction is warranted. Moreover, the Court notes that any reduction greater than the reduction granted here would result in sentencing disparity.[2]

---

[2] Comparisons are difficult in many cases, but here Maes's cooperation is readily compared with that of Wayne Banks, an unindicted co-conspirator. Wayne Banks served as the compelling lead witness in the Government's prosecution of Eric Hayes and Terrence Williams yet received only a reduction to 15 years from 40 years for his testimony and cooperation.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:05-CR-443-2 |
| | : | |
| | : | (Chief Judge Kane) |
| DEREK MAES, | : | |
| | : | |
| Defendant | : | |

# ORDER

**AND NOW**, on this 23rd day of December, 2009, upon consideration of the Government's motion to permit departure from Defendant Derek Maes's sentence (Doc. No. 1912), and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the motion is **GRANTED IN PART**. The Defendant's previously imposed sentence of 168 months is reduced to a sentence of 144 (one hundred forty four) months. This consists of 60 (sixty) months on each of Counts 1 and 2, and 144 (one hundred forty four) months on Count 7 to be served concurrently. All other provisions of the judgment entered on September 2, 2008, are unchanged.

                                                                 S/ Yvette Kane
                                                                 Yvette Kane, Chief Judge
                                                                 United States District Court
                                                                 Middle District of Pennsylvania